UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL VINCENT GLUCHOWSKI,

    Plaintiff,

v.                                         Case No. 8:13-cv-00924-T-30MAP

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

    In this *pro se* appeal, Plaintiff seeks this Court's review of the Commissioner's decision denying his claim for disability insurance benefits ("DIB"). *See* 42 U.S.C. § 405(g). Plaintiff argues the administrative law judge ("ALJ") erred by failing to find that his post traumatic stress disorder ("PTSD") was a disabling condition prior to his date of last insured. He further argues that the ALJ was biased. After considering the parties' briefs and the administrative record in this case, I conclude that the Commissioner's decision is in accordance with the law and supported by substantial evidence. I therefore recommend the Commissioner's decision be affirmed.[1]

    *A. Standard of Review*

    To be entitled to disability insurance benefits, a claimant must be unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 42 U.S.C. § 423(d)(1)(A). A "physical or

---

[1] The matter was referred to me for a report and recommendation pursuant to Local Rule 6.01(c)(21).

mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (i.e., one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his age, education, and work experience. 20 C.F.R. § 404.1520. A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert,* 482 U.S. 137 (1987); 20 C.F.R. § 404.1520(f).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389 (1971). The ALJ's factual findings are conclusive if "substantial evidence" consisting of "relevant evidence as a reasonable person would accept as adequate to support a conclusion" exists. *See* 42 U.S.C. § 405(g); *Keeton v. Dept. of Health and Human Servs.*, 21 F.3d 1064 (11th Cir. 1994). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence

preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Further, the Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066; *Jamison v. Bowen*, 814 F.2d 585 (11th Cir. 1987).

### *B. Background*

Plaintiff was fifty-four years old at the time of his administrative hearing, has a high school education, and work experience as a state trooper (R. 28, 111, 134). He alleges he has been unable to work since September 1, 2006, due to bipolar disease, depression, PTSD, right shoulder problems, and a hand injury (R. 129, 133).[2] The ALJ agreed some of Plaintiff's alleged impairments were severe. Specifically, the ALJ found at step two and three of the sequential analysis that Plaintiff suffered from severe impairments of PTSD with symptoms of anxiety, stress, and depression; however, none qualified as a listed impairment in C.F.R. Part 404, Subpart P, Appendix 1 (R. 14). At step four, the ALJ concluded that Plaintiff retained the RFC to perform medium work except that he was limited to simple one to two step instructions, low stress jobs with no contact with the public, and that the jobs should be object-focused as opposed to time pressure/production quota jobs (R. 16). With that RFC, the ALJ, aided by the testimony of a vocational expert, found Plaintiff could not perform his past relevant work but could perform a significant number of jobs in the national economy (R. 17). Accordingly, the ALJ found Plaintiff was not disabled (R. 18). Plaintiff, who has exhausted his administrative remedies, filed this action.

### *C. Discussion*

In this appeal, Plaintiff raises two issues: 1) the ALJ failed to properly find his PTSD was

---

[2] Plaintiff's date of last insured was December 31, 2006.

a disabling condition prior to his date of last insured, and 2) the ALJ was biased against him. I discuss each of these arguments below and conclude that the ALJ's decision is supported by substantial evidence.

### 1. PTSD

The first issue Plaintiff raises is whether the ALJ erred by failing to find his PTSD a disabling condition prior to his date of last insured. In support, Plaintiff maintains that the ALJ was uninformed about the effects of law enforcement PTSD and improperly found that Plaintiff was able to work. To the contrary, the Commissioner argues that the ALJ adequately explained that there was no evidence in the record that Plaintiff suffered a mental or physical impairment on or before his insured status expired on December 31, 2006, and no physician had ever opined that Plaintiff was unable to work due to any mental or physical impairment.

To be eligible for DIB, a claimant must prove that he was disabled on or before his date of last insured. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citation omitted). "If a claimant becomes disabled after []he has lost insured status, [his] claim for disability benefits must be denied despite h[is] disability." *Burden v. Barnhart*, 223 F. Supp.2d 1263, 1268 (M.D. Fla. 2002). When determining whether a claimant is disabled, an ALJ should consider evidence post-dating an individual's date of last insured as it may be relevant so long as it bears "upon the severity of the claimant's condition before the expiration of his or her insured status." *Ward v. Astrue*, No. 3:00-cv-1137-J-HTS, 2008 WL 1994978, at *4 (M.D. Fla. May 8, 2008) (quoting *Basinger v. Heckler*, 725 F.2d 1166,1169 (8th Cir. 1984)).

The ALJ explained that after careful consideration of the entire record, which would include records post-dating Plaintiff's insured period, he could find no evidence of a mental impairment that

would preclude the claimant from performing the mental demands of his RFC. Additionally, the ALJ concluded that there was no evidence in the record that a treating or examining physician told the Plaintiff that he was unable to work due to a mental or physical impairment on or before his date of last insured.

The ALJ's findings are supported by the record. There is virtually no medical evidence generated during the insured period related to Plaintiff's PTSD. In fact, as referenced by the ALJ in his opinion, the only evidence of Plaintiff's condition at or around the insured period is a comprehensive pretrial psychological evaluation and treatment records by Dr. Ronald Field on February 3, 10, 22, 28, 28, and March 6, 2007.[3] In Dr. Field's report, Plaintiff reported that he suffered several psychiatric symptoms of depression, anxiety, and PTSD; however, he did not take any medication for these symptoms (R. 222). Dr. Field observed that Plaintiff was "well groomed, maintained adequate eye contact throughout the examination. His speech was fluent, and no perseverations were noted. [His] [c]omprehension was judged to be intact for daily conversation, and he was exceptionally cooperative." (R. 223). Plaintiff was also noted to be "alert and attentive throughout the evaluation … [h]e was well oriented to time, place, and person … had no difficulty performing simple mental manipulation tasks requiring working memory as well as focused and sustained concentration and attention." (R. 224). His memory was also said to be intact, and his verbal and nonverbal reasoning abilities were both in the average range (*Id.*). Dr. Field observed that Plaintiff had the ability to understand right from wrong; however, his judgment varied

---

[3] It appears from the record that Plaintiff began treatment with Dr. Field, shortly after or as a result of his arrest in Ft. Lee, New Jersey for impersonating a Drug Enforcement Administration agent. He pleaded guilty and was sentenced to two years of probation (R. 181-82).

depending on his psychiatric symptoms, stress, and other factors (*Id.*).  Nonetheless, Plaintiff did not exhibit symptoms of a thought disorder or delusions, his insight and self-awareness were intact, and he was in a stable mood despite some symptoms of depression and anxiety reported (R. 225). In terms of personality functioning, Dr. Field noted that Plaintiff was experiencing significant depressive symptoms and anxiety, and his situational stress (i.e. his legal issues at the time and some family problems) interfered with his mood and ability to concentrate and think clearly. (*Id.*).  But Dr. Field stated that Plaintiff was able to keep his stressful thoughts and experiences to a minimum most of the time (*Id.*).  Dr. Field suggested Plaintiff take medication to mitigate his symptoms of anxiety, stress, and depression and seek psychotherapy to alleviate any symptoms of his alleged PTSD (R. 226).

This report does not suggest, as Plaintiff urges, that Plaintiff's PTSD during the insured period was debilitating.  Indeed, the opposite is true.  Further, his pre-sentence report dated May 14, 2007, also suggests that Plaintiff was able to function quite well at the time.  In that report, Plaintiff stated that he was the only person taking care of his daughter, he cared for her daily, bathed her, fed her, made sure she got to school on time, and was there to pick her up from school (R. 197). Plaintiff informed his probation officer that he was in "good" physical health and denied any limitations or disabilities, although he was hospitalized once in October 2005 for a torn rotator cuff (R. 198).  Plaintiff was also noted as having a carpentry job waiting for him in Florida (R. 198).

Furthermore, the evidence Plaintiff provided, which is four years or more subsequent to the insured period, supports the ALJ's finding that Plaintiff was not disabled during the alleged onset date of September 1, 2006, and the date of last insured of December 31, 2006.  Sometime in 2010, Plaintiff began psychological treatment with Dr. Amarjeet S. Dillon, a psychiatrist.  Dr. Dillon noted

that Plaintiff still suffered flashbacks but Plaintiff stated he had them under control (R. 333). Plaintiff also stated during appointments that he was "doing fair," "doing fine," but feeling hyperactive, restless, and somewhat depressed (R. 333-34). Most importantly, no physician, including Dr. Dillon, has ever opined that Plaintiff's conditions rendered him unable to function during the insured period (R. 236-93). While the medical evidence may suggest Plaintiff's symptoms of PTSD has progressively worsened over time or at least has worsened to the extent Plaintiff is now seeking help and taking multiple medications to alleviate his symptoms, the record, however, does not support a finding that Plaintiff's PTSD was disabling during the insured period. *See Caces v. Comm'r of Soc. Sec. Admin.*, ___F. App'x ___, No. 13-11466, 2014 WL 1243813, at * 2 (11th Cir. Mar. 27, 2014) (holding that although records may show a worsening of condition, plaintiff must prove the pain was so limiting that he was rendered disabled prior to his date of last insured). Accordingly, I find the ALJ's findings as to Plaintiff's PTSD are supported by substantial evidence.

### 2. Bias

Plaintiff next argues that the ALJ discriminated against him due to his arrest and felony conviction because of the ALJ's comment, at the administrative hearing, that Plaintiff "ran into a bit of trouble in 2006." Additionally, Plaintiff contends that the ALJ's statement, "If I paid everybody that came in and had their hand out and had a story, I wouldn't have a job," evidences bias. In response, the Commissioner contends that the ALJ's statements did not reveal a biased intent. Instead, those statements demonstrated the ALJ's intent to follow the Social Security Act and its governing regulations in determining Plaintiff's claim. The Commissioner further contends that the question about Plaintiff's arrest and felony conviction was a polite characterization rather

than a prejudicial remark.

A social security plaintiff is entitled to a full and fair hearing. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). For a hearing to be full and fair, the ALJ presiding over the hearing must not be prejudiced or partial in any way. *See* 42 C.F.R. § 404.940. An ALJ's bias is disqualifying if it "stem[s] from an extrajudicial source and result[s] in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *Borgens v. Halter*, 164 F. Supp.2d 1309, 1329 (M.D. Fla. 2001) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)). Bias cannot arise from the ALJ's view of the law; it must be personal. *See First Nat'l Monetary Corp., v. A.J. Weinberger*, 819 F.2d 1334, 1337 (6th Cir. 1987) (citations omitted). An ALJ is presumed to be unbiased, *see Schweiker v. McClure*, 456 U.S. 188, 195 (1982), so a plaintiff challenging this presumption carries the burden of proving otherwise. *See Borgens*, 164 F. Supp. 2d at 1329.

I agree with the Commissioner that the ALJ's statements do not reveal any bias towards Plaintiff.[4] When making the statement as to Plaintiff's felony conviction, the ALJ was simply

---

[4] In addition, there is some authority to suggest that Plaintiff may have raised his bias argument too late. According to 20 C.F.R. § 404.940, if a plaintiff objects to the ALJ who is conducting the hearing, he must notify the ALJ at the earliest opportunity, so that the ALJ can decide whether to proceed with the hearing or withdraw. 20 C.F.R. § 404.940. Plaintiff did not raise an objection to the ALJ's comments at his administrative hearing until this appeal. His earliest opportunity to object, however, would have been at the hearing. Because Plaintiff failed to object, the Court is precluded from evaluating the issue of ALJ's bias. *See Stokes v. Astrue*, No. 8:08-cv-1657-T-23HTS, 2009 WL 2216785, at *14 (M.D. Fla. Jul. 23, 2009) (concluding that "[s]ince a review of the hearing transcript discloses a failure to object in the requisite manner, 'the Court is precluded from reviewing the issue of the ALJ's bias.'") (citation omitted); *see also Klinger v. Barnhart*, No. CIV.A. 02-1008, 2003 WL 21654994, at *2 (E.D. Penn. Jul. 15, 2003) (holding if Plaintiff alleges bias at an administrative hearing, the plain language of the statute requires Plaintiff to interrupt the ALJ, object to the conduct, and ask the ALJ to recuse himself and "failure to do so results in waiver of the opportunity to allege bias against the ALJ."). Regardless, as the Court will discuss further, the ALJ's comments do not reveal any

inquiring as to Plaintiff's work history and problems before arriving in Florida (R. 28-29).[5] There is no indication in the record that the ALJ used the information related to Plaintiff's arrest to find that Plaintiff was not disabled. *See id.* To the contrary, that information and the surrounding documentation of Plaintiff's arrest, was the ALJ's only evidence of Plaintiff's mental state at or around the time of Plaintiff's insured period. Thus, I do not find Plaintiff has met his burden to prove that the ALJ's comments about his felony conviction demonstrated any bias towards Plaintiff that rendered the ALJ unable to decide this matter impartially.

Similarly, I do not find the ALJ's comment "If I paid everybody that came in and had their hand out and had a story, I wouldn't have a job," evidences bias. When making that comment, the ALJ was explaining to the Plaintiff how his particular case was problematic as there was little

---

bias. And although Plaintiff was represented by counsel at the hearing, Plaintiff is proceeding *pro se*. The Court must construe *pro se* pleadings liberally. *See Tannenbaum v. U.S.*, 148 F.3d 1262, 1263 (11th Cir. 1998) (*per curiam*) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.").

[5] The colloquy Plaintiff complains demonstrated the ALJ's bias includes the following:

> Q. Okay, so you're a state trooper?
> A. Yes, sir.
> Q. Did 22 years on that job?
> A. Twenty two and a half, sir.
> Q. I call it 22, you call it 22.5
> A. Yes, sir.
> Q. Somebody asked me how long I served in Vietnam; I said a
> year and a month, some people say a year. So it all depends.
> A. You want to get every month in.
> Q. All depends on the individual.
> A. Yes sir.
> Q. Okay. Since you retired and then you got in a bit of a tangle up
> there, upstate?
> A. Yes, sir.
> Q. Okay. You're not working now …

(R. 28).

evidence of his medical condition during his insured period, and the Social Security rules required evidence of his condition during that time period.[6] Reliance on the Social Security rules to make an informed decision does not evidence a personal bias, "[t]he bias must be personal, not judicial." *Weinberger*, 819 F.2d at 1337. Plaintiff's allegation of bias is, therefore, unwarranted.[7]

### D. Conclusion

For the foregoing reasons, it is hereby

---

[6] At the hearing, the ALJ stated:

> [t]he problem with your particular case is we have what we call a date last insured issue and in your case it's in 2006, September of 2006, no December 31, 2006. So I'm required to make my determination based on the evidence. If I paid everybody that came in and had their hand out and had a story, I wouldn't have a job. "So what the commissioner[,] and I sit here as though I'm the Commissioner of Social Security, he says these are our rules, we want you to enforce the rule and my issue in this case looking for medical evidence that supports your condition back in 2006.

(R. 45-46).

[7] In the second to last paragraph of Plaintiff's memorandum, he also appears to allege an ineffective assistance of counsel claim. Plaintiff states that he was misrepresented by his attorney at his administrative hearing. He also alleges that he made several attempts to contact his counsel to discuss information related to his PTSD but was repeatedly told by counsel that the information did not matter. "The Supreme Court [,however,] has never recognized a constitutional right to counsel in Social Security proceedings." *Cornett v. Astrue*, 261 F. App'x 644, 651 (5th Cir. 2008) (denying ineffective assistance of counsel claim after plaintiff was denied SSI benefits) (citing *Brandyburg v. Sullivan*, 959 F.2d 555, 562 (5th Cir. 1992)). Other courts have also noted that Social Security claimants cannot claim ineffective assistance of counsel after they have hired counsel of their own choosing. *See Hodges v. Colvin*, 4:12CV493-CAS, 2013 WL 6410688, at n. 8 (N.D. Fla. Dec. 9, 2013)*; see also Hettinger v. Richardson,* 365 F. Supp. 1245, 1246 (E.D. Pa.1973); *Cole v. Comm'r of Soc. Sec.*, No. 2:09CV225–SAA, 2010 WL 3782445, at *5 (N.D. Miss. Sept. 20, 2010). Accordingly, Plaintiff's claim for ineffective assistance of counsel cannot stand. *See id.*

RECOMMENDED:

1.  That the Plaintiff's complaint be dismissed and the Commissioner's decision be affirmed.

2.  That the Clerk be directed to enter judgment for the Commissioner.

IT IS SO ORDERED in Tampa, Florida on June 10, 2014.

*Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).